JERRY L. CORBIN v. CHARLES W. LANGDON

No. 7418DC448

(Filed 18 September 1974)

1. Contracts § 12— construction of contract — unambiguous terms

The court is required first to look at the contract itself to ascertain the intention of the parties, and where the language is clear and unambiguous, the court is obliged to interpret the contract as written and cannot, under the guise of construction, reject what parties inserted or insert what parties elected to omit.

---

Corbin v. Langdon

---

2. **Contracts § 26— contract to sell accounts receivable — parol evidence properly excluded**

A contract between the parties was clear and not ambiguous where, by its terms, the seller agreed to sell his dental equipment, furniture, and fixtures to the purchaser, the parties agreed with respect to fees during an interim period during which purchaser and seller practiced together, they agreed that seller's accounts receivable should be included in the sale and that all amounts received from that source from and after 1 September 1970, the date of the contract, should be the property of purchaser, seller agreed not to compete with purchaser in the City of Greensboro for a period of two years, and purchaser agreed to assume the obligations of seller under a lease agreement then existing; therefore, the trial court properly refused to allow parol evidence which changed the intent of the parties as expressed in their written agreement.

3. **Contracts § 26— parol agreement to amend contract — evidence properly excluded**

The trial court did not err in refusing to consider evidence of an alleged parol agreement amending the contract between plaintiff and defendant where there was not sufficient evidence of mutuality of assent to support the agreement.

APPEAL by plaintiff from *Kuykendall, Judge,* 29 October 1973 Session, District Court, GUILFORD County. Argued in Court of Appeals 26 August 1974.

On 1 September 1970, plaintiff and defendant, both dentists, entered into a contract the pertinent sections of which are:

"1. SALE OF EQUIPMENT. The Seller [plaintiff herein] hereby sells, transfers and conveys to the Purchaser [defendant herein] all the dental equipment, instruments, apparatus, furniture and fixtures, patients' records, X-ray files, books, drugs, medicines, bottles, supplies and all other items located in the Seller's office and used in his practice, all as more fully set forth on Schedule A."

2. REPRESENTATIONS. (Not pertinent to appeal.)

"3. PURCHASE PRICE. The Purchaser hereby pays to the Seller Eighteen Thousand Dollars ($18,000.00) as consideration for the sale of equipment heretofore referred to, the receipt of which is hereby acknowledged.

"4. INTERIM PRACTICE. Prior to the date of this Agreement, the Purchaser had the right and did assist the Seller in his practice and observed his methods of operation. All fees earned by the Purchaser for services rendered by him to his own patients up to the date of this Agreement shall be col-

lected by and belong to the Purchaser. All cash fees earned by the Seller during this period for services rendered by him or by the Purchaser to patients of the Seller shall be collected by the Seller, and shall remain the property of the Seller.

"5. ACCOUNTS RECEIVABLE. This sale shall include book accounts due the Seller in respect of his practice for services rendered prior to September 1, 1970. All such amounts received by the Purchaser from and after September 1, 1970, shall be the property of Purchaser."

6. RESTRICTIVE COVENANT. (Not pertinent to appeal.)

7. LEASE ASSUMPTION. (Not pertinent to appeal.)

On 9 October 1972, plaintiff instituted this action to recover for accounts receivable and for an accounting. He alleged that "on or about August 26, 1970" he entered into a contract with defendant for defendant to collect accounts receivable due plaintiff as a result of plaintiff's dental practice "up until on or about August 26, 1970". He further alleged that "on October 26, 1970" defendant reported to plaintiff that defendant had collected $872 on plaintiff's accounts, paid to plaintiff $600, and furnished plaintiff a list of those accounts still owing. Defendant answered denying all material allegations but admitting he had paid to plaintiff $600. By his second defense, defendant averred that by agreement dated 1 September 1970, copy of which was attached to the answer as Exhibit A and incorporated in the second defense, plaintiff sold his dentistry practice to defendant including book accounts due plantiff; that defendant had collected and retained certain book accounts. By his third defense, defendant set up a counterclaim against plaintiff for the $600 collected by defendant on the accounts receivable which, he alleged, he had paid plaintiff by mistake.

Defendant then moved for summary judgment under Rule 56, Rules of Civil Procedure, both on plaintiff's action and defendant's counterclaim. As the bases of his motion he stated that the terms of the written agreement, copy of which was attached to his verified answer, were clear and unambiguous and that the $600 was paid by mistake since plaintiff, by the terms of the contract, was clearly not entitled to the money.

In opposition to the motion, plaintiff filed his affidavit and the affidavit of his wife. By his affidavit, plaintiff avers

that the sale did not include the accounts receivable but that the parties agreed "during the drafting and signing" of the agreement that purchaser would have to be given the legal right to collect the accounts since seller was leaving Greensboro; that it was agreed that the accounts would be transferred to purchaser who would collect them and retain for his own use 25% of the amounts collected. Plaintiff further averred that on 25 October (no year stated though the inference is that the year was 1970) the two went over the accounts in the office of purchaser and that purchaser gave seller a check for $428 representing the total collected on accounts less certain expenses and purchaser's 25%. At that time, according to the affidavit, purchaser stated "he wanted no part of the accounts and was turning them back over to Dr. Corbin for collection"; that he gave plaintiff a list of those from whom he had not collected; that on 1 November 1970, plaintiff sent out bills to these persons and was surprised to learn that also on 1 November 1970, defendant had sent out mimeographed letters advising those persons that he had purchased plaintiff's practice by written contract and all future payments on accounts should be made to him. The affidavit of plaintiff's wife was to the same effect and in identical verbiage.

The court granted both motions. Plaintiff excepted to the granting of the motion for summary judgment on his cause of action, but did not except to the granting of the motion of the defendant's counterclaim for $600.

*J. C. Barefoot, Jr., for plaintiff appellant.*

*Younce, Wall and Suggs, by Percy L. Wall, for defendant appellee.*

MORRIS, Judge.

Plaintiff has only one assignment of error based on the only exception appearing of record. The exception is to the court's finding "as a fact that there is no genuine issue of fact to be submitted to the trial court in connection with plaintiff's claim asserted and (sic) the complaint filed herein."

Plaintiff first argues that the court failed to consider "parol evidence which is admissible as completing and defining a vague contract." We do not argue with the principles of law espoused by plaintiff. He relies on *Root v. Insurance Co.*, 272

N.C. 580, 583, 158 S.E. 2d 829 (1967), and quotes Justice Branch as having written for the Court:

> "It is a well-recognized principle of construction that when the language of a contract is clear and unambiguous, the court must interpret the contract as written, *Parks v. Oil Co.,* 255 N.C. 498, 121 S.E. 2d 850, and 'The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.' *Sell v. Hotchkiss,* 264 N.C. 185, 141 S.E. 2d 259."

[1, 2] Plaintiff earnestly contends that it is obvious from his affidavit that the intention of the parties was that defendant collect the accounts receivable for the plaintiff. We are required first to look at the contract itself to ascertain the intention of the parties. Where the language is clear and unambiguous, the court is obliged to interpret the contract as written, *Root v. Insurance Co., supra,* and cannot, under the guise of construction, "reject what parties inserted or insert what parties elected to omit". *Weyerhaeuser Co. v. Light Co.,* 257 N.C. 717, 719, 127 S.E. 2d 539 (1962). The contract before us is certainly not ambiguous. Rarely is a court asked to interpret an agreement as clear in its meaning as this one. The seller agreed to and did sell his dental equipment, furniture and fixtures to the purchaser for $18,000. The parties agreed with respect to fees during an interim period during which purchaser and seller practiced together. They then agreed that seller's accounts receivable should be included in the sale and that all amounts received from that source from and after 1 September 1970, the date of the contract, should be the property of purchaser. Seller then agreed not to compete with purchaser in the City of Greensboro for a period of two years, and purchaser agreed to assume the obligations of seller under a lease agreement then existing. It would be difficult to imagine a contract containing less ambiguity. It is obvious that the parol evidence seller seeks to have considered is not competent as explaining or completing or defining a vague contract, nor is it admissible to show the intent of the parties.

Plaintiff takes the position that the court should have considered the evidence as showing the practical interpretation given the contract by the parties and, therefore, competent evi-

dence of their intent. Again, "[p]arol understandings, although they induce the making of a written contract, are merged in the writing so that they cannot be used to change the contract or show any intent different from that expressed in the instrument." 17 Am. Jur. 2d, Contracts, § 261. The intent of the parties expressed by the entire contract is unambiguous. It is abundantly clear that the parties could have just as clearly expressed the intent for purchaser to collect the accounts for seller and pay the proceeds over to seller after retaining 25% for himself. This was not done, and the court could not properly consider any evidence which changed the intent of the parties as expressed in their written agreement.

[3] Alternatively, plaintiff urges that the court should have considered the evidence as showing an amendment to the contract by oral agreement. It is true that the parties to a contract may, by a later agreement, rescind a contract—in whole or in part—amend it in any respect, add to it, or replace it with a substitute, if the original contract remains executory and if the parties in their later agreement, act upon a sufficient consideration. 17 Am. Jur. 2d, Contracts, § 459. Here, at the time defendant says there was an amendment, the original contract was executory in at least one aspect—the time limit of the ancillary contract in restraint of trade had not expired. In all other respects, the contract was executed. Assuming that this is sufficient to meet the test, plaintiff's own proffered evidence shows there was no meeting of the minds sufficient to furnish supportive consideration. In order to create a binding amendment to the contract, the same meeting of the minds is necessary that was necessary to make the original contract. Here plaintiff says, by his affidavit, that defendant on 26 October 1972, gave him a list of patients from whom collection had not been effected and said he wanted nothing further to do with collecting the accounts. Plaintiff says further that on 1 November 1972 he learned that defendant had sent mimeographed notices to all these patients advising them to make payment to defendant since all accounts receivable had been transferred to defendant "by written contract". This clearly negates any meeting of the minds on an amendment to the written contract.

> "Rendition of a summary judgment is, by the rule itself, conditioned upon a showing by the movant (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of

·law. G.S. 1A-1, Rule 56(b) ; *Kessing v. Mortgage Corp., supra* [278 N.C. 523, 180 S.E. 2d 823 (1971)]." *Williams v. Board of Education,* 284 N:C. 588, 599, 201 S.E. 2d 889, 896 (1973), and cases there cited.

Here defendant relied on the pleadings and the contract itself and was entitled to summary judgment, nothing else appearing. Plaintiff's affidavits in opposition did not negate defendant's showing; but, on the contrary, buttressed defendant's position that there is no genuine issue as to any material fact. The contract is clear and unambiguous. It is completely clear with respect to the intention of the parties. The court correctly refused to consider evidence of any parol agreement made contemporaneously with the contract nor did it err in failing to consider evidence of an alleged parol agreement amending the contract where there is no sufficient evidence of mutuality of assent to support the agreement.

Plaintiff does not take exception to nor appeal from that portion of the judgment awarding summary judgment on defendant's counterclaim for $600. We note that by his complaint, plaintiff admitted that defendant had in fact, paid to him the sum of $600. See *Pope v. Continental Insurance Co. of New York,* 161 Fed. 2d (C.C. App. 7th Cir.) 912 (1947). He again relies on the parol agreement made contemporaneously with the written contract.

We are of the opinion that plaintiff's assignment of error based upon his single exception is without merit.

Affirmed.

Chief Judge BROCK and Judge MARTIN concur.